## DONOVAN *v.* GUY.

1. DISORDERLY CONDUCT—ILLEGAL PARKING.

   A person who declined to move his car from a no-parking zone at the request of police officers was not therefor a disorderly person (Benton Harbor General Code).

2. ARREST—OFFICERS—JUSTIFICATION.

   An officer of justice is bound to know the·law, and if he makes an arrest which the facts on which he proceeds would not jus-tify, if true, he is a wrongdoer,

3. SAME—JUSTIFICATION.

   An arrest made for one purpose cannot be justified by another.

4. SAME—JUSTIFICATION—FALSE IMPRISONMENT.

   A person unlawfully arresting another for one offense cannot, where sued for false imprisonment, justify on the ground that the one arrested was guilty of some other offense for which the arrest, under the circumstances, would have been legal, or because reasonable grounds existed for an arrest for such other offense.

5. SAME—JUSTIFICATION—DISORDERLY CONDUCT—ILLEGAL PARKING.

   An arrest for disorderly conduct is not justified by reason of the fact that the police officers could have arrested the person for illegal parking.

6. FALSE IMPRISONMENT — EVIDENCE — PRESUMPTIONS — JUS-TIFICATION.

   A plaintiff in an action for false imprisonment need only show that he has been restrained of his liberty for the presumption then arises that he was unlawfully imprisoned, it then being

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur, Disorderly Conduct §§ 1–3.
[2] 4 Am Jur, Arrest § 121.
[3, 5] 4 Am Jur, Arrest § 40.
[4, 7] 22 Am Jur, False Imprisonment § 84.
[6] 22 Am Jur, False Imprisonment § 107.

incumbent upon the person committing the trespass to show that it was legally justified.

7. SAME—JUSTIFICATION—DISORDERLY CONDUCT—ILLEGAL PARKING.
   Defendants in action for false imprisonment failed to show they were legally justified in arresting plaintiff on a disorderly conduct charge by reason of the fact that they could have arrested him for illegal parking, hence, verdict was improperly directed for defendants.

Appeal from Berrien; Hadsell (Philip A.), J. Submitted October 9, 1956. (Docket No. 54, Calendar No. 46,976.) Decided December 28, 1956.

Case by Elmer Burlingame Donovan against James S. Guy and Edwin James Ward for malicious prosecution and false imprisonment. Directed verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded for new trial.

*Milo O. Bennett,* for plaintiff.

*Charles W. Gore* and *W. M. Cunningham,* for defendants.

KELLY, J. Plaintiff's action for false imprisonment against defendants (police officers of the city of Benton Harbor) resulted in a judgment for defendants, entered on a directed verdict by the court at the close of all proofs.

Plaintiff was arrested Sunday, June 21, 1953, about 3:30 p.m., after he had parked his car in what defendants claim was a no-parking area in Jean Klock park, a park of the city of Benton Harbor, Michigan. Plaintiff and his wife had driven to the park from their home in Kalamazoo. After parking the car, plaintiff's wife went to the beach for a swim and plaintiff testified that he could not accompany her because he had, shortly before this day, suffered a sunstroke.

The manager of the park approached plaintiff's car and endeavored to have him move it. He testified:

"Mr. Donovan was standing side of the car and I asked him if he would please move his car, that was an unloading zone and emergency zone and pointed out to him the yellow lines and the no-parking sign. Mr. Donovan told me that he didn't think he had to move his car, that he knew his rights and he had been through this before and he saw no reason for moving it and I again explained to him that the yellow lines were for no parking and so forth, and I got tired of carrying on that type of conversation with him and asked him to please move the car and went back to the pavilion."

The park manager further testified that he made 3 additional attempts to convince plaintiff to move the car, and he then called the police. Defendants responded to his call about 3:30 p.m.

After unsuccessfully endeavoring for about 15 minutes to convince plaintiff he should move his car, defendant Sgt. Guy gave plaintiff a parking violation ticket and called the wrecker to tow plaintiff's car away.

When the wrecker arrived, plaintiff obeyed Sgt. Guy's instructions to get out of the car and lock it. Plaintiff left his car as the tow chains were being attached and proceeded on his way to the beach to find his wife. The mechanic found difficulty moving the car because the emergency brake was on. Sgt. Guy walked about 40 feet and caught up with plaintiff, advised him of this fact, and plaintiff returned to the automobile, unlocked the car, and released the brake.

Plaintiff testified:

"After I released the brake, he said, 'Now, you go with me.' He took me to the squad car and I took a

seat in the rear of the car. He told me I was under arrest."

It was at this point plaintiff was arrested for disorderly conduct. Sgt. Guy describes plaintiff's conduct previous to his arrest, as follows:

"There wasn't any acrimony down there that day, between Mr. Donovan and me or with Mr. Ward. No one was angry. We were both gentlemen. He was very much of a gentleman."

Plaintiff was driven to the Benton Harbor police station and from there to the county jail, at St. Joseph. The imprisonment began at about 3 :30 p.m. at the beach and continued until 10 p.m., when plaintiff was released from the county jail on bond.

Plaintiff was not tried on either the parking violation or the disorderly conduct charge. The following morning (Monday), after defendant Guy had consulted with the municipal judge at Benton Harbor, a warrant was issued against plaintiff charging him with violation of CLS 1954, § 257.602 (Stat Ann 1952 Rev § 9.2302), i.e., refusal to comply with an order of a police officer who was then engaged in directing or controlling traffic on the highways of this State. Upon trial before the municipal court plaintiff was found guilty by a jury. He took an appeal to the Berrien circuit court where he was acquitted.

Plaintiff filed his declaration April 23, 1954. The case was tried before Hon. Chester P. O'Hara, presiding in the circuit court for the county of Berrien, and on October 21, 1954, a jury returned a verdict in favor of plaintiff in the sum of $5,000.

On December 2, 1954, the trial judge in his opinion stated:

"This court will require the plaintiff to remit $3,000, leaving a judgment for $2,000 to be entered

within 30 days from the receipt of this opinion; otherwise a new trial will be granted to these defendants."

On December 23, 1954, plaintiff filed a declination to file remittitur and on the same day the trial judge granted the motion for a new trial. An appeal from that order resulted in this Court sustaining the trial court. See *Donovan* v. *Guy,* 344 Mich 187.

The present appeal to this Court is from Hon. Philip A. Hadsell's opinion of June 6, 1956, directing a verdict for defendants. In the opinion granting the motion, the trial court held:

"The plaintiff was guilty of disorderly conduct by refusing to move his car after being requested so to do there on that occasion, and the court will instruct the jury to return a verdict of no cause for action in favor of the defendants."

In order to more fully understand the trial court's position on this point, we set forth a statement made by the court in the early stages of the trial:

"Now, the thing that occurs to me, so I should give you both notice of this is that there could be a common-law disorderly person, one not covered by the provisions of the statute. If there was a refusal on the part of the plaintiff to remove his automobile from a place designated as a no-parking zone or a loading zone, there would be no serious doubt in my mind but what that person would be a disorderly person under the common law."

The issue in this appeal is set forth by appellant (and sustained by the record) as follows:

"From the outset of the litigation, criminal and civil, it had been recognized that plaintiff was not a disorderly person—not 'by any stretch of the imagination,' said Judge O'Hara in his charge to the jury on the former trial. On the instant trial, the disorderly persons statute (CL 1948, § 750.167 [Stat Ann 1955

Cum Supp § 28.364]) and the Benton Harbor disorderly persons ordinance (Ch 4, § 101.1) were pointed out to the trial judge and, again, it was the consensus that plaintiff was not disorderly *within the definitions*. Nor was there any dispute on the proposition that 'An arrest for one offense cannot be justified by proof that the person arrested was committing another offense, though the offenses are intimately connected in time and place.' (*Moran* v. *City of Beckley* [CCA], 67 F2d 161; see, also, *Malcolmson* v. *Scott,* 56 Mich 459; *Noe* v. *Meadows,* 229 Ky 53 [16 SW2d 505, 64 ALR 648]; 22 Am Jur, False Imprisonment, § 84, p 412.)

" 'It would not do  *  *  *  to hold that the illegality of a person's arrest upon an unfounded charge would be cured by the subsequent charge and conviction for another offense.' Cooley on Torts (3d ed), p 315.

"With all this the court agreed. So, if *justification* for defendants was to be found; if the portentous directed verdict were to have any semblance of authority, the finding must now be of *common law* disorderly conduct. The trial judge, after conceding that plaintiff's offense was 'not covered' by statute or ordinance, then indicated a volume of the Michigan Reports lying before him and said to counsel:

" 'But I take it *this case* holds that doesn't limit misdemeanors to disorderly persons who are defined in the statute.'

"The above 'this case' was *In re Stegenga,* 133 Mich 55."

In *In re Stegenga,* 133 Mich 55, the charter of Grand Rapids provided that the common council should have the power to enact ordinances to punish disorderly persons of all kinds. Pursuant to this charter, the common council did enact an ordinance entitled "An ordinance relative to disorderly persons in the city of Grand Rapids." This Court held that the ordinance should not be construed as limiting the authority of the council to legislate with refer-

ence to such conduct as would be regarded disorderly under the general statute.

There was no ordinance in Benton Harbor relative to disorderly persons. The Benton Harbor general code did provide:

"No person shall, in the city of Benton Harbor, create a disturbance in a public place or at any lawful assembly. * * *

"No person shall, in the city of Benton Harbor, make any breach of the peace. * * *

"No person shall wilfully fail or refuse to comply with any lawful order or direction of a police officer."

We do not agree with appellees' contention that because of these provisions of the general code the facts in this case prove that appellant was a disorderly person.

In *Malcolmson* v. *Scott,* 56 Mich 459, this Court held:

"An officer of justice is bound to know the law, and if he makes an arrest which the facts on which he proceeds would not justify, if true, he is a wrongdoer. * * *

"An arrest made for one purpose cannot be justified by another." (Syllabi.)

In 22 Am Jur, False Imprisonment, § 84, p 412, we find the following:

"A person unlawfully arresting another for one offense cannot, where sued for false imprisonment, justify on the ground that the one arrested was guilty of some other offense for which the arrest, under the circumstances, would have been legal, or because reasonable grounds existed for an arrest for such other offense. * * * But it seems that if the arrest is made for several offenses, justification as to one of the offenses charged will constitute a good defense."

Appellant was not arrested for several offenses,—merely for disorderly conduct, and the fact that de-

fendants could have arrested plaintiff for illegal parking, or other offenses mentioned above in the general code, would not justify his arrest on a charge of disorderly conduct.

In *Barker* v. *Anderson,* 81 Mich 508, this Court said:

"As a general proposition, it must be admitted that it is only necessary for the plaintiff, in an action of this kind, to show that he has been imprisoned or restrained of his liberty. The presumption then arises that he was unlawfully imprisoned, and it is for the person who has committed the trespass to show that it was legally justified."

Defendants in this case did not show that they were "legally justified" in arresting appellant on a disorderly conduct charge.

The court erred in directing verdict for defendants, and said verdict is reversed, set aside and held for naught, and this case is remanded to the circuit court for new trial.

Sharpe, Smith, Edwards, Carr, and Black, JJ., concurred with Kelly, J.

Dethmers, C. J., concurred in the result.

Boyles, J., did not sit.