**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45151**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: June 21, 2018 |
| Plaintiff-Respondent, | ) |
| | ) Karel A. Lehrman, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MICHAEL KENNER, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Jonathan P. Brody, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant. Kimberly A. Coster argued.

Hon. Lawrence G. Wasden, Attorney General; Jeff Nye, Deputy Attorney General, Boise, for respondent. Jeff Nye argued.

_____

HUSKEY, Judge

Michael Kenner appeals from the judgment of conviction entered upon his conditional guilty plea to possession of methamphetamine. Kenner argues the district court erred in denying his motion to suppress. Because the search of Kenner was reasonable and we need not address whether the search exceeded the scope of the parole agreement, we affirm the district court's denial of Kenner's motion to suppress and judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

A warrant had been issued for Kenner's arrest for a parole violation. In addition, law enforcement received information from a confidential informant that Kenner was trafficking a controlled substance. Kenner was riding in the confidential informant's vehicle when officers received this information, and officers followed the vehicle and maintained communication with

1

the confidential informant as part of a controlled buy. Officers pulled over the vehicle, removed Kenner from the vehicle, and placed Kenner on the ground. Kenner was uncooperative and officers had difficulty controlling Kenner's hands. For officer safety, and in part due to injuries Kenner inflicted during a prior arrest, officers restrained Kenner's hands behind his back. Kenner was arrested.

While being arrested, Kenner repeatedly attempted to reach the back of his pants. The parole officer asked the other law enforcement officers to search Kenner. At approximately the same time, a narcotics officer interviewed the confidential informant who assisted the officers in Kenner's arrest. The confidential informant informed the officer that Kenner was concealing illegal drugs in his "butt-cheeks." Officers moved Kenner to a standing position against a patrol car. Officers pulled back the waistband of Kenner's pants and underwear and retrieved a package containing methamphetamine and marijuana from Kenner's gluteal cleft. Retrieving the package of drugs took five to ten seconds.

The State charged Kenner with felony possession of a controlled substance with the intent to deliver, methamphetamine, Idaho Code § 37-2732(a)(1)(A).[1] The State also filed a persistent violator enhancement. Kenner filed a motion to suppress,[2] which the district court denied. Kenner entered a conditional plea of guilty to an amended charge of possession of a controlled substance, methamphetamine, I.C. § 37-2732(c)(1).[3] As part of the agreement, Kenner reserved the right to appeal the denial of his suppression motion. The district court imposed a unified sentence of seven years, with two years determinate.[4] Kenner timely appeals.

---

[1] The State also charged Kenner with misdemeanor possession of a controlled substance, marijuana, Idaho Code § 37-2732(c)(3), but this charge was later dismissed.

[2] The record indicates Kenner withdrew his motion to suppress and entered a guilty plea. Kenner hired new counsel and was permitted to withdraw the guilty plea for just cause. Kenner then renewed his motion to suppress and filed supplemental briefing on the motion.

[3] While it appears the marijuana possession charge and persistent violator enhancement were dismissed in 2016, the State amended the information such that the State filed a second motion to dismiss, and the district court again ordered the dismissal of the marijuana possession charge and persistent violator enhancement in 2017.

[4] The district court ruled that the sentence would run concurrently with the sentence in Kenner's parole case.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

Although Kenner contends that both constitutions were violated, he provides no cogent reason why Article I, Section 17 of the Idaho Constitution should be applied differently than the Fourth Amendment to the United States Constitution in this case. Therefore, the Court will rely on judicial interpretation of the Fourth Amendment in its analysis of Kenner's claims. *See State v. Schaffer*, 133 Idaho 126, 130, 982 P.2d 961, 965 (Ct. App. 1999).

## III.

## ANALYSIS

Kenner argues the district court erred in denying his motion to suppress. Kenner asserts that the search was unreasonable under the Fourth Amendment for two reasons. First, Kenner claims he was subjected to a strip search which exceeded the scope of a search incident to arrest, given the lack of exigency and the manner and place of the search. Second, Kenner argues the search exceeded the scope of the parole agreement.

### A.     The Search of Kenner Was Reasonable Under the Circumstances

The Fourth Amendment prohibits unreasonable searches and seizures. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A search incident to a valid arrest is among those exceptions and, thus, does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (abrogated on other grounds); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a

lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. Searches incident to arrest are allowed because "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape," and it is further reasonable "for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel,* 395 U.S. at 763. The fundamental question under the Fourth Amendment is whether the search satisfies objective standards of reasonableness. *Torres v. Commonwealth of Puerto Rico*, 442 U.S. 465, 471 (1979). The test of reasonableness is not capable of precise definition or mechanical application, but rather, it requires balancing the need for the search against the invasion of personal rights. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). When evaluating the reasonableness of a search, courts must consider the scope of the intrusion, the manner in which the search was conducted, the justification for initiating the search, and the place in which the search was conducted. *Id.*

In this case, Kenner admits the officers had legal cause to arrest him. However, Kenner asserts that the invasiveness of the search exceeded the scope of a lawful search incident to arrest. Kenner requests this Court adopt a bright-line rule prohibiting officers from conducting strip searches in any public place, absent a showing of exigency. We reject Kenner's request for a bright-line rule because a strip search did not occur in this case, and the district court correctly concluded that the retrieval of the controlled substance was reasonable under the circumstances of this case.

### 1. The search of Kenner was not a strip search

Kenner's requested bright-line rule, which would prohibit officers from conducting strip searches in any public place absent exigency, is inapplicable in this case because a strip search did not occur. A strip search generally refers to an inspection of a naked individual, but done in a way that does not examine the body cavities of a subject.[5] *State v. Harding*, 9 A.3d 547, 561 (Md. 2010). The Fourth Circuit defined a strip search as "the exposure of a person's naked body for the purpose of a visual or physical examination." *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001). Although strip searches can occur even when a subject is partially clothed, strip

---

[5]    In this context, the *Harding* court compared a strip search to a "visual body cavity search," which extends to a visual inspection of the anal and genital areas, and a "manual body cavity search," which includes some degree of touching or probing of body cavities. *State v. Harding*, 9 A.3d 547, 561 (Md. 2010).

searches--as the name suggests--involve disrobing the subject, *id.* at 364, or publicly exposing the subject's body, *Harding*, 9 A.3d at 561. In this case, there is no evidence the officers removed any article of Kenner's clothing or exposed his body to the public. Although officers pulled back the waistband of Kenner's pants and underwear, Kenner was not disrobed as a result. Insofar as Kenner's argument on appeal characterizes the search as a strip search, Kenner's argument fails.

**2.      The district court did not err when it determined the search of Kenner was a reasonable search**

Since the search of Kenner was not a strip search, we do not need to analyze the search pursuant to the justifications or safeguards that Kenner proposes on appeal. Kenner's requested bright-line rule is inconsistent with the opinion in *Wolfish*, which explained that courts should not mechanically apply a test to determine the reasonableness of a search. *Wolfish*, 441 U.S. at 559. Instead, the reasonableness inquiry requires a balance between the need for the search and the invasion of personal rights. *Id.* Part of this inquiry considers whether police took appropriate steps to diminish the potential invasion of the suspect's privacy. *United States v. Williams*, 477 F.3d 974, 977 (8th Cir. 2007).

In *Williams*, officers conducted a traffic stop of Williams and executed a search warrant for his arrest. *Id.* at 975. During a pat-down search, the officers felt something in the defendant's pants. The officers transported the defendant to a partially secluded parking lot, opened the defendant's pants, reached inside his underwear, and retrieved drugs near his genitals. *Id.* The Eighth Circuit Court explained the officers took sufficient precautions to protect the defendant's privacy before seizing the contraband. *Id.* at 977. There were no vehicles that entered the lot and there was no evidence a third party could see the defendant's private areas. From a distance, a passerby would only see an officer reach inside the defendant's pants and pull out a bag. *Id.* This privacy was sufficient for the *Williams*' Court to conclude that the search did not unreasonably infringe on the defendant's privacy interests when balanced against the legitimate need to seize contraband. *Id.* at 977-78.

In *United States v. Ashley*, 37 F.3d 678 (D.C. Cir. 1994), an officer watched the defendant disembark from a bus and followed the defendant to the street outside the bus station. *Id.* at 679. The officer approached the defendant, explained how the city had a drug problem, and asked if the defendant was carrying drugs. The defendant answered in the negative and consented to a search of his person. The defendant unbuttoned one of his pairs of pants, the

officer opened a second pair of the defendant's pants, and the officer removed a brown paper bag from the defendant's underwear. *Id.* The appellate court held that the seizure of the drugs was reasonable because the officer took precautions to ensure the defendant was not subject to public exposure. *Id.* at 681-82. The officer did not confront Ashley at the bus station, but instead followed him around to the side of the station. The officer also testified that he was standing in front of the defendant so the public would not see the defendant's pants unfastened. Ultimately, the *Ashley* Court determined the seizure of the drugs from inside the defendant's underwear did not add significantly to the invasion of privacy and, thus, the search was lawful. *Id.*

In *State v. Jenkins*, 842 A.2d 1148 (Conn. 2004), police officers received a tip from a confidential informant that the defendant was involved in trafficking drugs. *Id.* at 1151. Officers arrested the defendant outside a restaurant for attempting to sell narcotics and searched the defendant. During the search, an officer pulled the defendant's pants and underwear away from his body and discovered contraband. *Id.* The Connecticut Appellate Court upheld the search and explained that the manner in which the officers conducted the strip search struck the appropriate balance between the need for the particular search and the invasion of personal rights. *Id.* at 1158. In support of its conclusion, the court explained the officers took the defendant to the side of a restaurant away from the public street and public view, and the officers did not remove any of the defendant's clothing. *Id.*

Here, the question is whether there was an appropriate balance between the need for the search and the invasion of Kenner's personal rights. First, the officers in this case had reasonable suspicion that Kenner was concealing a controlled substance on his body. Kenner was on parole, and the officers received information from a confidential informant that Kenner was trafficking a controlled substance. At the time of the arrest, Kenner was uncooperative and had previously injured an officer during an arrest. Kenner attempted to reach the back of his pants during the arrest, and the confidential informant informed the officers that Kenner was concealing drugs down the backside of his pants. In reviewing the facts of this case, Kenner was searched pursuant to a valid arrest. The district court correctly concluded the officers reasonably suspected Kenner possessed a controlled substance. Thus, pursuant to the holding in *Chimel*, it was reasonable for the arresting officers to search for any evidence on Kenner's person to prevent its concealment or destruction.

In addition, the officers took appropriate steps to minimize their invasion into Kenner's privacy. The officers did not remove any layer of Kenner's clothing or expose Kenner to the public. Officers moved Kenner to a standing position against the patrol car and, thus, away from the open view of the public. Rather than removing Kenner's pants or pulling down Kenner's underwear, the officers only pulled back the waistband of Kenner's pants and underwear. The search lasted only five to ten seconds, and the officers never touched Kenner below the waist. Furthermore, the search was conducted at night with no third party present at the scene. While it is true the officers reached into Kenner's underwear, this action was necessary to remove the drugs that were hidden in Kenner's gluteal cleft. We agree with the district court that the officers ensured the privacy of Kenner's body to the extent required under the circumstances.

**B.**     **We Need Not Address Whether the Search of Kenner Exceeded the Scope of the Parole Agreement**

Kenner argues the search in this case exceeded the scope of the consent-to-search terms of his parole agreement. The standard for measuring the scope of a consent to search is objective reasonableness. *State v. Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002). The officers did not search Kenner solely due to the terms of the parole agreement. Similarly, the district court determined the search of Kenner was reasonable under the totality of the circumstances, without relying on the consent terms of the parole agreement. The language of the parole agreement is therefore not determinative in evaluating the search in this case.

## IV.

## CONCLUSION

Because the search of Kenner was reasonable and we need not address whether the search exceeded the scope of the parole agreement, we affirm the district court's denial of Kenner's motion to suppress and judgment of conviction.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.